IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 19-cr-00098-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEONARD LUTON,

    Defendant.

---

**ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER**

---

    This matter is before the Court on Defendant Leonard Luton's Motion for Revocation of Detention Order (Doc. # 36). The Court has reviewed the relevant pleadings, applicable law, and pertinent record. For the following reasons, Mr. Luton's Motion is DENIED.

## I.     BACKGROUND

    This criminal action arises from an indictment filed on March 6, 2019 (Doc. # 20), charging Mr. Luton with five counts of fraud and conducting a scheme or device to defraud under false pretenses pursuant to 18 U.S.C. §§ 1341 and 1342. A five-day jury trial is set to commence on August 19, 2019. (Doc. # 33.)

    Based on the indictment, the nature of this case is that Mr. Luton and his associates allegedly "devised and intended to devise, and participated in a scheme and artifice to defraud victim S.O., by obtaining property, to wit, approximately $900,000 in

United States currency, by means of false and fraudulent pretenses, representations, and promises relating to a lottery scheme and artifice to defraud[.]" (Doc. # 20 at 1.) Mr. Luton and his associates allegedly told S.O., an 80-year-old woman, that she had "won a lottery and needed to make certain payments in order to collect the winnings" and those "payments were routed through others to" Mr. Luton and his associates. (*Id.*)

On March 7, 2019, Mr. Luton was arraigned and attended a discovery hearing with Magistrate Judge Hegarty. (Doc. # 23.) On that day, Mr. Luton waived his right to a detention hearing with Magistrate Judge Crews and was remanded into custody because Mr. Luton "was on Writ from Larimer County for state charges stemming from the conduct in the instant case." (Doc. # 26 at 3.) While Mr. Luton was granted bond in the Larimer County case, he was unable to afford the bond amount of $450,000. (*Id.*) Therefore, if Magistrate Judge Crews released Mr. Luton, it would have been into the custody of Larimer County, and Mr. Luton would not have received any time-served for a possible federal sentence. (*Id.*)

On May 14, 2019, the Larimer County case was dismissed against Mr. Luton. (Doc. # 26-1.) Mr. Luton then requested that the Court reopen Mr. Luton's detention hearing (Doc. # 26), and, on March 18, 2019, Magistrate Judge Crews granted that motion (Doc. # 28). On March 20, 2019, the United States of America submitted a memorandum in support of Mr. Luton's pretrial detention. (Doc. # 29.) On March 21, 2019, Magistrate Judge Crews held a hearing on Mr. Luton's Motion to Reopen Detention Hearing. (Doc. # 30.) At the hearing, Magistrate Judge Crews concluded that, based on the evidence, the Government proved by a preponderance of the evidence

that "there are no or is no condition or combination of conditions that the Court can impose to reasonably assure Mr. Luton's appearance, as required, and, therefore," he ordered that Mr. Luton be detained pending trial. (Doc. # 36-1 at 31.)

On that same day, Magistrate Judge Crews issued a written Order of Detention Pending Trial pursuant to 18 U.S.C. § 3142(f)(2). (Doc. # 31.) His reasons for detention included:

- Weight of the evidence against the defendant is strong
- Subject to lengthy period of incarceration if convicted
- Lack of stable employment
- Lack of stable residence in this district
- Lack of financially responsible sureties
- Lack of significant community or family ties to this district
- Significant family or other ties outside the United States
- Use of alias(es) or false documents

(*Id.*)

On April 26, 2019, Mr. Luton moved this Court for an Order revoking his detention order. (Doc. # 36.) On May 21, 2019, the Court held a hearing on Mr. Luton's Motion for Revocation of Detention Order (Doc. # 39.) At that hearing, the Court heard argument from counsel for the Government and Mr. Luton and, although the Court gave both parties an opportunity to submit new evidence into the record, neither party submitted any testimony or exhibits. Based on the Court's review of the previous record,

pleadings, applicable law, and argument heard at the May 21, 2019 hearing, Mr. Luton's Motion is denied.

## II.  RELEVANT LAW

The Court's review of the magistrate judge's order of detention is *de novo*. See *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). Under this standard of review, the Court must judge the issue anew, but in so doing, the Court may utilize the factual and evidentiary record developed during the detention hearing before Magistrate Judge Crews. *Id.* The Court, however, must reach its own findings of fact and conclusions of law. See *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (finding that on de novo review, a district court "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion").

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *id*. § 3142(b), (c). The Government has the burden of proof. *Cisneros*, 328 F.3d at 616. "It must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *Id.* (citations omitted). "A detention order must include 'written findings of fact and a written statement of the reasons for the detention,' but a reviewing district court can state its reasons for detention 'in writing, or orally on the record[.]'" *United States v. Mobley*, 720 F. App'x 441, 444 (10th Cir. 2017) (quoting 18 U.S.C. § 3142(g)) (internal citations omitted).

4

"Under § 3142(g), the judicial officer must consider four factors as part of the evaluation[.]" *Id.* 18 U.S.C. § 3142(g) provides:

> **(g) Factors to be considered.**--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person . . .
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g)(1)–(4).

### III.    DISCUSSION

Magistrate Judge Crews ruled that Mr. Luton should be detained before trial because the Government proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure his appearance in court as required. (Doc. # 31.) However, he also concluded that the Government failed to meet its burden to prove that Mr. Luton posed "a risk of safety to any other person or the community" by "clear and convincing evidence" or that Mr. Luton posed "a risk of obstruction of justice or attempt to obstruct justice" by a "preponderance of the evidence." (Doc. # 36-1 at 30:1–9.)

Mr. Luton, asserting that he would appear at court hearings, requests this Court to revoke the pretrial detention order.

5

### A.   MR. LUTON'S ARGUMENTS

First, Mr. Luton asserts that his current employment status, ability to have obtained Legal Permanent Resident Status in 2015, and the fact that he lives with his mother in Brooklyn "make it more, not less, likely that Mr. Luton will attend future Court appearances." (Doc. # 36 at 5.) As to his current employment status, Mr. Luton works as a part-time "DJ, electrician, and general handyman to make ends meet." (*Id.*) To obtain his Legal Permanent Resident Status, Mr. Luton asserts that he diligently pursued the task for 15 years during which he "spent a considerable amount of money" and "appeared at nearly a dozen immigration interviews." (*Id.*) Mr. Luton believes that these facts "show that Mr. Luton is hardworking, dedicated, diligent, law-abiding and resourceful[,]" which make him more likely to appear at his court proceedings in Colorado. (*Id.*)

Second, Mr. Luton proposed bond conditions that would assure this Court that he would appear at his court proceedings in Colorado. First, Mr. Luton suggested that he would be willing to agree to supervised release in coordination with the United States Probation Department for the Eastern District of New York, which has offices in Brooklyn. (Doc. # 36 at 6.) Next, his mother has offered to serve as a third-party custodian to monitor Mr. Luton and has offered her car for Mr. Luton to use to travel to any and all hearings in Colorado.[1] (*Id.* at 5–6.) At the detention hearing before Magistrate Judge Crews, Mr. Luton's counsel represented that "[a]s a final resort . . .

---

[1] Mr. Luton's mother was not available for live testimony at the May 21, 2019 hearing.

6

[Mr. Luton] would agree to a halfway house if that meant he could be out of custody." (Doc. # 36-1 at 23:3–6.)

Mr. Luton also argues that his lack of a criminal history should weigh in favor of his pretrial release. (Doc. # 36 at 6.) Mr. Luton's counsel represented at the March 21, 2019 hearing that Mr. Luton "wants to confront these charges to deal with them, to resolve them. And he knows the only way to do that is to return to Colorado." (Doc. # 36-1 at 14:1–3.) Mr. Luton has also offered to relinquish his passport (Doc. # 36-1 at 16:23–25.)

Finally, Mr. Luton states that he is not going to throw away everything he has been working towards, including a United States citizenship, and this motivation, together with the combination of conditions he has proposed, should reasonably assure this Court that Mr. Luton will appear at his proceedings in Colorado. (Doc. # 36 at 5.)

### B.   THE GOVERNMENT'S ARGUMENTS

In the Government's Memorandum in Support of Detention (Doc. # 29), the Government argues that Mr. Luton poses a flight risk because:

- "Mr. Luton has strong ties to Jamaica;
- The weight of the evidence is overwhelming;
- The potential penalties are significant enough to provide substantial incentive to flee; and
- The defendant has no ties to Colorado, his personal situation, and his legal status in this country substantially raise the risks of flight."

(Doc. # 29 at 3.)

**C.     ANALYSIS**

The Court conducts a *de novo* review of Magistrate Judge Crews' detention order. Applying the four factors set forth in the Bail Reform Act, the Government has proven by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Mr. Luton's attendance at court-related proceedings in Colorado.

1.     Nature and Circumstances of the Offense

When analyzing the first factor, the weight of authority suggests that "defendants facing severe penalties such as life imprisonment have a greater incentive to flee." *United States v. Ho*, no. 3:16-CR-46-TAV-HBG-1, 2016 WL 5875005, at *4 (E.D. Tenn. Oct. 7, 2016), *aff'd sub nom*, *United States v. Szuhsiung Ho.*, No. 16-6561, 2016 WL 10077327 (6th Cir. Dec. 9, 2016) (collecting authority); *United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003) (finding that facing a potential maximum of thirty years' imprisonment is strong evidence of incentive to flee); *United States v. Khraizat*, No. 00-2128, 2000 WL 1769637, at *2 (6th Cir. Nov. 17, 2000) (considering the defendant's "length[y] sentence if convicted"); *United States v. Nichols*, 897 F. Supp. 542, 547 (W.D. Okla. 1995), *aff'd* 1995 WL 430191 (10th Cir. July 21, 1995) ("The prospect of a lengthy prison term, life imprisonment or the death penalty provides Defendant with a great incentive to flee."); *United States v. Madoff*, 316 Fed. App'x 58, 59 (2d Cir. 2009) (determining that the defendant's age of seventy combined with the length of his potential sentence was evidence of incentive to flee). Indeed, "courts and Congress alike have previously looked to the statutory maximum of charged offenses, rather than

the minimum or likely sentence, when considering detention." *Ho*, 2016 WL 587005, at *4 (citing *Nichols*, 897 F. Supp. at 547).

The nature and circumstances of the instant case are troubling. The allegations indicate that Mr. Luton, along with others, created a scheme to defraud older people. (Doc. # 20.) The indictment provided that one such victim was 80 years-old, and, as mentioned in the Government's brief, another victim was 67 years-old. (Doc. ## 20, 29 at 7.) Preying upon older people in the hope of obtaining more than $1,000,000 on false pretenses is a serious offense and one that, if the right circumstances are present, carries a significant sentence. Under certain circumstances, Mr. Luton may face a sentencing of 87 to 108 months in prison. (*Id.*) Because the investigation has revealed multiple victims over the age of 55, and the investigation is still in progress, if 10 or more victims over the age of 55 are identified as part of this alleged lottery scheme, a sentencing enhancement would be in order. (*Id.*) The Court agrees with the Government that Mr. Luton is more likely to flee because of the significant ramifications of a conviction. (Doc. # 29 at 7.) Accordingly, the first factor weighs in favor of Mr. Luton's pretrial detention.

    2.    <u>Weight of the Evidence</u>

The Court also finds that the weight of evidence against Mr. Luton favors his pretrial detention. The Government argues Mr. Luton's guilt is supported by the testimony of victim "S.O., bank and phone records, and the investigation conducted by Special Agent Hoyland." (Doc. # 29 at 4.) That evidence would purportedly show that Mr. Luton's was present at S.O.'s residence when she gave $65,000 to a man

impersonating an FBI agent in relation to the alleged lottery scheme,[2] S.O. was directed to send cash, cashier checks, and iPhones to addresses related to Mr. Luton and his associates, and there was coordination requiring S.O. to send cashier checks in the total amount of $100,000 to multiple victims, including S.P., where the checks were made payable to Mr. Luton. (*Id.* at 6–7.) Moreover, it is compelling that Mr. Luton was arrested at "S.O.'s home the same day that Frank White told S.O. that agents would arrive at her home to pick up money from her[.]" (*Id.* at 10.) Therefore, the weight of the evidence favors pretrial detention.

    3.    <u>History and Characteristics of the Person</u>

Pursuant to 18 U.S.C. § 3142(g)(3), the Court may consider the following information as related to the history and characteristics of Mr. Luton:

> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law

18 U.S.C. § 3142(g)(3)(A)–(B).

---

[2] The Court notes that, at the May 21, 2019 hearing, the Government corrected information contained in its Memorandum in Support of Detention (Doc. # 29). The Government inaccurately stated that GPS location data from Mr. Luton's iPhone that was "in [Mr. Luton's] possession at the time of his arrest" "would place him at S.O.'s residence" on the night of October 2, 2018, when S.O. handed $65,000 in cash to Mr. Luton or one of his associates. (Doc. # 29 at 10.) The Government inadvertently obfuscated GPS location data for coordinates contained in the iPhone's navigation application. However, there is other evidence indicating that Mr. Luton was present at S.O.'s residence on October 2, 2018.

With respect to this factor, courts consider a defendant's family and community ties to the district in which the defendant must appear for court proceedings. *Ho*, 2016 WL 5875005, at *5 ("While not dispositive, this fact is evidence of a risk of flight.") (collecting authority); *United States v. Guerra-Rodriguez*, 59 F.3d 171 (Table), No. 95-5773, 1995 WL 378552, at *1 (6th Cir. June 23, 1995) (considering "lack of ties to Tennessee as [a] factor[ ] in evaluating the risk of flight" of a defendant); *United States v. Ishraiteh*, 59 F. Supp. 2d 160, 163 (D. Mass. 1999) (considering that the defendant's ties to the charging district were "tentative at best"); *United States v. Cashin*, 739 F. Supp. 1107, 1111 (E.D. Mich. 1990) (concluding that fact that defendant had "no professional or financial ties to the community other than his illegal activities" was "a very serious obstacle to [the defendant's] release pending trial"). "Some courts, however, have read 'communities ties,' within § 3142(g)(3)(A) to include, more generally, ties to the United States rather than the charging district." *Id.* (quoting *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (citing *Truong Dinh Hung v. United States,* 439 U.S. 1326, 1329 (1978)). Moreover, "[r]elevant factors that support a serious risk finding include the use of a number of aliases[] [and] unstable residential ties to a community . . . ." *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S. D. Fla. 2005).

In the instant case, the Court finds that Mr. Luton's lack of ties to Colorado and to the United States make him a flight risk, and as such, the third factor favors pretrial detention. A review of the record, pleadings, and all submitted evidence establish that Mr. Luton has no professional, employment, family, or community ties to Colorado. This

11

is disconcerting. Further, Mr. Luton's only ties to Colorado are the alleged commission of crimes at issue, including his arrest near S.O.'s residence in Estes Park.

Mr. Luton avers that he has substantial ties to the United Sates and Brooklyn, New York in particular. (Doc. # 36 at 4.) Mr. Luton alleges that he resides with his mother in Brooklyn, his brothers live in Brooklyn, and that Mr. Luton has steady work in New York, the steadiest of which is his job as a Disc Jockey. (*Id.* at 4; Doc. # 36-1 at 17:23–24.) However, Mr. Luton offered no evidence corroborating his alleged strong ties to New York or that his employment as a DJ was steady. Further, in deciding whether to order pretrial detention, this Court is persuaded by the weight of authority that suggests employment, community, and family ties to the **charging district** are what is significant.

Furthermore, Mr. Luton's strong ties to Jamaica weigh in support of a finding that he is a flight risk. Mr. Luton is a Jamaican citizen, has frequently traveled to Jamaica, has family and friends in Jamaica, including his alleged[3] two-year old son, and has wired money to Jamaican accounts on numerous occasions.  (Doc. # 29 at 3–4; Doc. # 36-1 at 30:17–18.) The Government argues that the "evidence indicates that a good portion of the illegal proceeds was wired to [Mr. Luton's] associates in Jamaica." (Doc. # 29 at 3.) There is also evidence that one of the alleged operators of the lottery scheme resides in Jamaica. *See* (*id.* at 4.) Because Mr. Luton has strong ties to Jamaica and the perpetration of the alleged crimes and fraudulent funds at issue are also related to Jamaica, the third factor favors pretrial detention.

---

[3] The Court uses the word "alleged" because, at the May 21, 2019 hearing, the Government contended that evidence may exist that calls into question whether Mr. Luton has a two-year old son in Jamaica.

Additionally, Mr. Luton's alleged use of aliases also supports pretrial detention. *Giordano*, 370 F. Supp. 2d at 1264. The Government suggests that there is evidence that Mr. Luton used aliases to allegedly commit this lottery fraud. First, the Pretrial Services Report provides that Mr. Luton allegedly used two aliases. (Doc. # 29 at 8.) Second, "Agent Hoyland would testify that through an inventory of the [Mr. Luton's vehicle], a credit card in someone else's name was located." (*Id.*) Mr. Luton's alleged use of aliases in addition to his lack of ties to Colorado adds weight to a determination that he poses a flight risk.

The Court recognizes that Mr. Luton has no criminal history prior to these alleged offenses. (Doc. # 36 at 6.) However, Mr. Luton's lack of ties to Colorado and substantial ties to Jamaica support that he is a flight risk. As such, the third factor favors pretrial detention.

4. <u>The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by Person's Release</u>

On the final factor, the Government contends that Mr. Luton poses a risk to the safety of the victim and to the community because, as a person with limited financial resources, he may resort to more financial crime, and elderly victims are susceptible to risk and intimidation. (Doc. # 29 at 10.) Because victim S.O. is an eighty-year old woman who lives alone, the Government fears that such access to S.O. will enable Mr. Luton or other un-identified persons involved in the lottery scheme to intimidate S.O. (*Id.*) The Government, however, provided no evidence in support of such assertions. Accordingly, the Court is not persuaded that the fourth factor favors pretrial detention.

5.  Risk of Obstruction of Justice

At the May 21, 2019 hearing, the Government requested the Court to reconsider Magistrate Judge Crews' ruling on whether the Government had proven by a preponderance of the evidence that Mr. Luton posed a risk of obstructing justice or attempting to obstruct justice. To determine whether a defendant should be detained pending trial, the Court may consider whether Mr. Luton poses "a serious risk that" he "will obstruct or attempt to obstruct justice . . .." 18 U.S.C. § 3142(f), (f)(2)(B).

In the Government's brief, it argued that, if Mr. Luton was released, he would pose a risk of obstructing justice based on evidence supporting that Mr. Luton previously attempted to obstruct justice. (Doc. # 29 at 11.) The Government asserts that law enforcement interviewed individual L.H. who stated that Mr. Luton called him and "a girl named 'D'" from a detention center and that Mr. Luton asked L.H. "to go onto his iCloud account and erase it for him." (*Id.*) Individual L.H. also told law enforcement that Mr. Luton "told D during the call" to "give L.H. the laptop and [L.H.] will shut it down for" Mr. Luton. (*Id.*) L.H. "told law enforcement" that "he did not feel comfortable erasing Luton's laptop and told Luton he could not do it." (*Id.*)

At the March 21, 2019 detention hearing before Magistrate Judge Crews, Mr. Luton argued that the purpose of his request from L.H. was to "protect his and his girlfriend's privacy" because his iCloud account contained "personal pictures of his girlfriend" that were also on his iPhone. (Doc. # 36-1 at 20:6–13.) During the May 21, 2019 hearing, Mr. Luton further responded to the Government's argument that Mr.

14

Luton was concerned that another person might gain access to his iCloud account, thus, potentially exposing sensitive private information to the public.

Mr. Luton's explanation is not persuasive. The Court is concerned by Mr. Luton's request of L.H. to delete his iCloud account because of the low probability that some individual would gain access to the iCloud account. Furthermore, there is likely more information available on an iCloud account than is contained on Mr. Luton's iPhone, including information from multiple devices that are registered to the same iCloud account. The Court finds that the Government proved by a preponderance of the evidence that, if Mr. Luton is released, he poses a serious risk that he will obstruct or attempt to obstruct justice, and therefore, this factor weighs in favor of pretrial detention.

## IV.   CONCLUSION

After analyzing the four factors set forth in the Bail Reform Act, the Court finds that Mr. Luton is a flight risk and that the factors weigh in favor of Mr. Luton's pretrial detention. Moreover, the Court finds that Mr. Luton poses a risk that he will obstruct or attempt to obstruct justice. For the reasons set forth above, it is ORDERED that Defendant's Motion for Revocation of Detention Order (Doc. # 36) is DENIED.

DATED: May 28, 2019

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge