**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 19-cr-00098-CMA-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEONARD LUTON,

    Defendant.

---

**DEFENDANT'S SENTENCING STATEMENT AND MOTION FOR SENTENCE BELOW ADVISORY GUIDELINE RANGE**

---

Defendant Leonard Luton ("Defendant"), by Counsel, Mark Edward Scabavea of SCABAVEA & ASSOCAIATES, LLC, hereby submits his sentencing statement and motion for sentence below advisory guideline range pursuant to D. C. Colo. LCrR 32.1 and U.S.S.G. § 6A1.2..

## I. INTRODUCTION

Defendant objects that Defendant's conspiracy caused a loss to the scheme which totaled $994,793.75, an increase of 14 levels under U.S.S.G. § 2B1.1(b)(1)(H), because the amount is more than $550,000 but less than $1,500,000. Defendant asserts that the loss is, at most $144,234, which is an increase of 10 levels under U.S.S.G. § 2B1.1(b)(1)(F). Defendant objects that Defendant's crimes caused a substantial financial hardship to S.O., an increase of 2 levels under U.S.S.G. § 2B1.1(b)(2)(A)(iii). Defendant objects to the government's assertion that a substantial part of the scheme was committed

1

outside the United States, an increase of 2 levels under U.S.S.G. § 2B1.1(b)(10)(B).  Defendant objects to the government's assertion that S.O. was a vulnerable victim and that Defendant should have known S.O. was vulnerable, an increase of 2 levels under U.S.S.G. § 3A1.1(b)(1).  Defendant also asserts a 2-level decrease for minor role under U.S.S.G. § 3B1.2(b), is appropriate in this case.  The total offense level is therefore 17.  Additionally, under the § 3553(a) factors, Defendant requests a time-served sentence.

## II.  LAW AND ARGUMENT

**A.       The Loss Attributed to Defendant is $144,234, an increase of 10 levels.**

Defendant objects to the 14-level increase under U.S.S.G. § 2B1.1(b)(1)(H), and asserts that, at most, a 10-level increase is appropriate under U.S.S.G. § 2B1.1(b)(1)(F).

A defendant's liability for loss in a scheme for purposes of U.S.S.G. § 2B1.1(b)(1), is limited to what the government can prove by a preponderance of the evidence (1) is part of the Defendant's ongoing scheme; and (2) is the amount of the loss, or a reasonable estimate thereof is associated with that conduct.  U.S. v. Kieffer, 681 F.3d 1143 (10th Cir. 2012).  In Kieffer, the Court stated:

> [T]he Government first had to prove by a preponderance of the evidence that the conduct giving rise to those losses (1) was a part of Defendant's ongoing scheme to engage in the unauthorized practice of law . . . .  Assuming the Government met its initial burden of proving relevant conduct, it then had to prove the amount of loss (or a reasonable estimate thereof) associated with that conduct by a preponderance of the evidence.  See United States. V. Peterson, 312 F.3d 1300, 1302 (10th Cir. 2002).

Id. at 1168.

Persuasive authority also states that the sentencing court should limit the defendant's liability to those acts of co-conspirators that were reasonably foreseeable and part of the criminal activity that the defendant "agreed to jointly undertake." See, e.g., Johnston, 620 F. App'x 839, 854-56 (11th Cir. 2015) (district court did not err attributing to defendants actions of conspiracy participants operating in separate, out-of-state office where defendants had an important role in furthering income tax fraud scheme, recruited participants, and shared information between branches; United States v. Lloyd, 807 F.3d 1128, 1145 (9th Cir. 2015) (in securities fraud case, reversing judgment attributing loss from California telemarketing boiler room to defendant managing Florida boiler room because defendant did not design overall scheme, did not pool resources, and was compensated from commissions form only his operation); United States v. Rodriguez, 751 1244, 1256-57 (11th Cir. 2014) (holding that defendant in mortgage scheme was properly attributed with losses associated with fraudulent use of her post office box because she "participated in the conspiracy and did not withdraw from it" and moreover because "rerouting the mail was essential to the success of the fraudulent scheme"); United States v. Ajojojoye, 753 F.3d 729, 737-39 (7th Cir. 2014) (holding that defendant was properly attributed with losses caused by co-defendants when he created fraudulent documents and false address used in scheme; emphasizing that the district court properly considered supporting evidence "in context and cumulation"); see also United States v. Sykes, 774 F.3d 1145, 1150-52 (7th Cir. 2014) (analyzing concept of foreseeability in detail).

Therefore, in order for this Court to attribute a loss to Defendant, the government must prove, by a preponderance of the evidence that (1) Defendant's relevant conduct is part of the ongoing scheme; and (2) the amount of the loss is associated with that relevant conduct.  Additionally, the acts of the co-conspirators must be foreseeable by the Defendant.

At trial, it appears that the government was able to prove a loss of $144,234 attributed to Defendant by a preponderance of the evidence.  [Doc. No. 134].  On Mar 24, 2018, a loss of $9,095 is arguably attributed to Defendant.  [Id. at 35].  Also on April 24, 2018, a loss of $9,000 is arguably attributed to Defendant.  [Id.].  On April 3, 2018, a loss of $9,095 is arguably attributed to Defendant.  [Id. at 38].  On April 6, 2018, a loss of $9,000 is arguably attributed to Defendant.  [Id. at 45].  On July 27, 2018, a loss of $20,000 is arguably attributed to Defendant.  [Id. at 50-55].  On or about September 26, 2018, a loss of $19,500 is arguably attributed to Defendant.  [Id. at 54-56].  On or about October 19, 2018, a loss of $25,000 is arguably attributed to Defendant.  [Id. at 65-69].  On or about October 26, 2018, a loss of $10,000 is arguably attributed to Defendant.  [Id.].  Also, on or about October 26, 2018, a loss of $34,1444 is arguably attributed to Defendant.  [Id.].

On October 3, 2018, Special Agent Amy Howard testified that "individuals came to [S.O.'s] home to pick up that $65,000 . . . ." and that Defendant was present with the individuals.  [Id. at 90-93].  However, the government failed to prove, by a preponderance of the evidence, that (1) Defendant's relevant conduct is part of the scheme to take $65,000 from S.O.; and (2) the amount of S.O.'s loss of $65,000 was associated with Defendant's conduct.  There is no evidence, or

4

very little evidence, that defendant was involved or even knew about the $65,000 pickup from S.O. Indeed, Defendant was asleep in the car while other individuals picked up the cash. This is buttressed by S.O.'s testimony that she was not able to identify Defendant as the person who took the $65,000 from her:

> Q. How confident is your testimony today that the person that come to your resident is the same person sitting over there?
>
> A. I can't say that he definitely is.
>
> Q. You said "definitely." Did I just hear you correctly?
>
> A. By looking at him now, I don't know.
>
> Q. So your testimony is you are not sure? You don't know, is that fair to day?
>
> A. Uh-huh, yes.

[Doc. No. 111 at 11-12].

Therefore, the loss attributed to Defendant is $144,234 and a 10-level increase is appropriate under U.S.S.G. § 2B1.1(b)(1)(F).

**B.   Defendant's crimes did not cause a substantial financial hardship to S.O**

Defendant objects to the government's and Probation's assertion that Defendant's crimes caused a substantial financial hardship to S.O. resulting in a 2-level increase. The government's argument for this increase is based solely upon S.O.'s written statement. [Doc. No. 108]. Probation's argument is based solely upon the government's argument. [Doc. No. 140 at 12]. It is important to point out that the government asserts the increase should result from S.O. only [Doc. No. 108 at 2] but provides an impact statement from S.P. [Doc. No. 140-2

5

at 4-9]. Probation asserts that the increase is due to both S.O. and S.P. [Doc. No 140 at 12].

According to S.O., she suffered the following as a result of Defendant's crimes:

> My husband died in April 2017, and I didn't have any financial concerns. Since these people have stolen most of my husband and my life's savings, my financial future is uncertain. I now must go on a tight budget. I now have a fixed income and very little savings that I now will live on until the day I die. I don't know how I will pay property taxes if they keep increasing. If anything ever happens to my health, or when I have to replace my car, or a major household repair, or appliance breaks down or anything major, it's uncertain how I will pay for all the costs. I will probably have to sell the home that my husband and I built to retire in to pay for expenses as I get older which was not ever the plan. They have stolen over $1,000,000.00 from me.

[Doc. No. 140-2 at 3].

This language, partially written in the subjunctive, states that S.O. suffers (1) loss of most of her life's savings; (2) an uncertain financial future; (3) living on a tighter budget; and (4) living on a fixed budget. [Id.]. This language also states that S.O. may (1) not know how to pay property taxes if they keep increasing; (2) may not know how to pay for health care, replacement of a car (if it needs replaced); (3) may not know how to pay for a major household repair (if a major household repair is needed); and (4) may have to sell her house. [Id.].

S.O.'s son also provided a statement which scantly echoes the hardship's S.O. states she suffered or believe may suffer. [Id. at 2].

S.O. wrote this impact statement on or about April 7, 2020, when the government first filed it. [Doc. No. 109-2]. Since that time, almost a year and a half ago, the government has presented zero evidence that S.O. has been (1)

6

unable to pay taxes; (2) unable to pay for health care or a replacement automobile; (3) unable to pay for major household repair; and (4) had to sell her house.

Regarding S.P. she also provided a statement. According to S.P., who was also a co-conspirator with Defendant for at least the $9,095 transfer on March 24, 2018, [Doc. No. 134 at 35] and the $9,095 transfer on April 3, 2018, [Id. at 38] who the government conveniently did not charge with the conspiracy, she suffered a loss of credit.

An increase of 2 levels under U.S.S.G. § 2B1.1(b)(2)(A)(iii), requires under the Sentencing Guidelines the following:

> Substantial Financial Hardship.—In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
> (i)  becoming insolvent;
> (ii)  filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
> (iii)  suffering substantial loss of a retirement, education, or other savings or investment fund;
> (iv)  making substantial changes to his or her employment, such as postponing his or her retirement plans;
> (v)  making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
> (vi)  suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1, cmt. n.4(f).

Regarding S.O., none of these factors apply. Regarding subsection v, because she stated that she may have to sell her house does not qualify as "relocating to a less expensive home" because there is no evidence that she has moved at all. Regarding subsection iii, S.O. does assert that she has lost "most of my husband and my life's savings;" however, beyond this statement there is no evidence to support how much of her savings existed in the first place, how much

7

she actually lost, and how much she recovered.  Her conclusory statement, standing alone, does not support a "substantial loss" by a preponderance of the evidence.

Additionally, as noted above, the government was able to prove a loss of $144,234 attributed to Defendant by a preponderance of the evidence.  Even if S.O. suffered a substantial loss of 1,000.000 to her life savings and that amount was not recovered and was substantial, Defendant is responsible for only about 14% of that loss; therefore, S.O. did not suffer a substantial loss attributable to Defendant.

Regarding S.P., none of these factors do not apply.  S.P. does check a box next to a pre-written statement that she "suffered substantial harm to my ability to obtain credit."  [Doc. No. 140-2 at 4].  This box checking statement is conclusory.  S.P. claims, in a provided statement, that Defendant convinced her to pay for taxes with lottery winning and then she voluntarily used her credit card to make cash advances.  [Id. at 5].  But this was her choice and the evidence at trial shows that S.P. was a co-conspirator with Defendant.  The government asserts because it did not charge her with a crime that she is a victim.  Not so, she is still a co-conspirator and not necessarily a victim.  But even if this Court determines that S.P. is a victim, she provided in her statement a credit report which sates her credit score was 671 on March 13, 2018.  [Id. at 8].  A 671 credit score is considered a good credit score.  Because S.P. had a good credit score she did not suffer "substantial harm to his or her ability to obtain credit."

Therefore, the 2-level increase is inappropriate.

**C.    The Substantial Part of the Scheme Occurred in the United States**

Defendant objects to the government's assertion that a substantial part of the scheme was committed outside the United States, an increase of 2 levels under U.S.S.G. § 2B1.1(b)(10)(B). To the contrary, the scheme occurred almost completely inside the United States. All of the victims and/or alleged victims were physically in the United States when the crimes were committed against them. All of the bank accounts used in the scheme that were presented in trial were bank accounts in the United States. All of the co-conspirators in the scheme, with the lone possible exception of Mr. Dobson, were physically in the United States when they committed actions in furtherance of the scheme. The only possible occurrences of the scheme that may have occurred outside of the United States are possible telephone calls from Mr. Dobson, who may have been in Jamaica, to victims of the scheme and bank accounts, not presented at trial, that may have ultimately received wired money from the scheme. Even if the Mr. Dobson's calls were from Jamaica and even if some bank accounts in Jamaica ultimately received wire money from the scheme, it is clearly not enough to determine that a substantial part of the scheme was committed outside the United States. Most, if not the entire scheme, was committed in the United States.

Therefore, the 2-level increase is inappropriate.

**D.    S.O. was not a Vulnerable Victim**

Defendant objects to the government's assertion that S.O. was a vulnerable victim and that Defendant should have known S.O. was vulnerable, an increase of 2 levels under U.S.S.G. § 3A1.1(b)(1). The government asserts S.O. was

vulnerable repeatedly in conclusory fashion and only alludes to her vulnerability with respect to S.O.'s age in the conclusory sentence: "and indeed this scheme depended upon, the exploitation of a vulnerable, lonely, naïve, and elderly widow. [Doc. No. 108 at 2, 18, 19]. Additionally, the government asserts that S.P. was a victim but S.P. was not elderly. [Doc. No. 134 at 98-101].

Additionally, in the governments provided victim statements, S.O. and her son assert that they have suffered emotional trauma <u>as a result</u> of the crimes. [Doc. No. 140-2 at 2-3]. However, they never assert that the victim had any mental or other trauma that would make S.O. vulnerable before the crimes. [<u>Id.</u>].

A victim is not vulnerable within the meaning of U.S.S.G. § 3A1.1(b)(1) solely due to their age. <u>United States v. Lee</u>, 973 F.2d 832 (10th Cir. 1992). In <u>Lee</u>, the Court stated in pertinent part:

> A review of the record demonstrates that the enhancement in this case was based solely on the victims' membership in the class of "elderly" persons. Without more, class membership cannot support a two point enhancement under section 3A1.1. . . . The language of the guideline requires that a victim be "<u>unusually vulnerable</u>" due to age," Guidelines, § 3A1.1, and the cases accordingly require that the sentencing court make particularized findings of vulnerability. Specifically, there should be a nexus between the victim's vulnerability and the crime's ultimate success. "An armed robbery of a blind, elderly, or physically disabled shopkeeper would normally trigger § 3A1.1, because the additional vulnerability of handicap or age <u>has been exploited</u>."

<u>Id.</u> at 834.

The government utterly fails to provide any evidence that S.O.'s elderly status had made her unusually vulnerable. The government simply states, or at least implies, that S.O. was vulnerable solely because she is elderly. That is not the standard. The government is required to prove that the scheme succeeded

10

because S.O. was elderly. It did not. Indeed, as the government posits, S.P. was a victim and the scheme worked on her - - but S.P. is not elderly.

Therefore, the 2-level increase is inappropriate.

**E.     Defendant Should Receive a 2-Level Minor Role Adjustment**

Defendant should receive a 2-level reduction for minor role under U.S.S.G. § 3B1.2(b). Factors determining whether minor role is appropriate include:

> (i)     the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmt. n.3(c).

Addressing each of these factors in turn, minor role under subsection b is appropriate. Regarding subsection i, there is some evidence that Defendant knew the scope of the activity but did not know its full extent. Regarding subsection ii, there is no evidence that Defendant participated in planning or organizing the activity; instead, he merely assisted in executing the plan. Regarding subsection iii, there is no evidence that Defendant exercised any decision-making authority. Regarding subsection iv, Defendant's participation in the scheme was to collect money from the victim and also to move money between bank accounts. Defendant did not contact S.O. or convince her to send money - - that higher function was executed by more culpable members. Regarding subsection v,

defendant only marginally benefited from the scheme. From a scheme that allegedly defrauded millions from victims, Defendant only allegedly collected, at most, a few thousand dollars. His lifestyle never increased - - he still slept on the streets of New York City in his car. He did not buy any significant assets. He was only able to drive a used car. He did not even have enough money to register his car as he had to have a friend register his car in his friends name.

Additionally, there were clearly many other involved in the scheme. As an example, Defendant was just one of many individuals who showed up at S.O. residence to collect the $65,000. When Defendant showed up to S.O.'s residence at a later time where he was apprehended, he was only expecting to receive a very nominal amount of money.

It is important here that Defendant does not ask this court for minimal role under subsection A or even the in-between 3-level adjustment. Defendant only requests a 2-level reduction for minor role which is clearly appropriate.

**F.      Guidelines Calculation**

Considering the above, Defendant's Total Offense Level is 17 and his criminal history category is I because he has zero criminal history. This results in an advisory range of 24-30 months.

### III.  MOTION FOR SENTENCE BELOW ADVISORY GUIDELINE RANGE

Defendant motions this Court for a below advisory guideline range of 24 months (time-served) pursuant to 18 U.S.C. 3553(a). A time-served sentence is sufficient, but not greater than necessary.

### A.    The History and Characteristics of the Defendant (a)(1)

Defendant came to the United States as an immigrant from Jamaica. On his own, he applied for an adjustment of status to a permanent resident which was granted. Defendant is a hard worker who works many jobs at once including an automotive mechanic and a DJ. Everyone that knows Defendant knows that he is a hard worker and a go-to person for any of their problems. Defendant spends almost all of his money to support his children and family who continue to reside in Jamaica. Defendant has never been convicted for a crime in his life. The instant matter is Defendant's only criminal conviction. Defendant has been incarcerated in FDC Englewood for the past two years. As an inmate that would normally and appropriately be sentenced to a facility for minimum security, Defendant has been required to be housed with inmates that are charged with very violent crimes, members of drug cartels and other violent offenders.

Additionally, because Defendant has been convicted in the instant case, he will lose his permanent residence he worked so hard to earn and subsequently suffer deportation to Jamaica where his life will be imperiled. Character letters provided by his friends and mentors have provided insight on what Defendant will face when he is deported to Jamaica. [Doc. No. 141-1].

Theses factors should somewhat mitigate his sentence.

### IV.  CONCLUSION

For all of these reasons, Defendant Leonard Luton respectfully requests a sentence of 24-months (time-served) imprisonment. The defense respectfully

requests the opportunity to make additional arguments at the sentencing hearing on August 5, 2021.

Dated this 22nd day of July, 2021.

Respectfully Submitted,

**SCABAVEA & ASSOCIATES, LLC**

s/ Mark E. Scabavea
MARK EDWARD SCABAVEA
301 Sheridan Blvd.
Lakewood, Colorado 80226
Office: (707) 592-5571
markscabavea@icloud.com

**CERTIFICATE OF SERVICE (CM/ECF)**

   I hereby certify that on July 22, 2021, I electronically filed the foregoing Unopposed Motion to Extend Deadline to File Objections to the PSR with the Clerk of the Court using the CM/ECF system and/or electronic mail, which will send electronic notification to all the parties.

Martha Ann Paluch
martha.paluch@usdoj.com

             s/ Mark E. Scabavea
             MARK EDWARD SCABAVEA
             301 Sheridan Blvd.
             Lakewood, Colorado 80226
             Office: (707) 592-5571
             markscabavea@icloud.com