IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-00098-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

  1.  LEONARD LUTON,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING STATEMENT AND MOTION FOR SENTENCE BELOW ADVISORY GUIDELINE RANGE**

---

The United States of America, by Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, through Martha A. Paluch and Sarah H. Weiss, Assistant United States Attorneys, respectfully submits this response to the Defendant's Sentencing Statement and Motion for Sentence Below Advisory Guideline Range, ECF 143.

### I.  Standard of Proof

The defendant challenges multiple sentence enhancements argued for by the government and the probation office. The Tenth Circuit has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." *United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008) (quoting *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993)). To meet this standard, the government "must show it is more likely than not that the factual matters on which it bears the burden are true." *United States v. Riesterer,* 224 F.Supp.3d 1156, 1167 (D. Colo. 2016) (citing

1

*United States v. Craig,* 808 F.3d 1249, 1257 n.7 (10th Cir. 2015)).[1] As argued in the government's sentencing statement, ECF 108, and below, the preponderance of the evidence support the proposed sentencing enhancements.

## II.     The Evidence Supports the Loss Attributed to the Defendant

The defendant admits that $144,234 in mailings are attributable to him by a preponderance of the evidence. Specifically, he concedes the amounts for the mailings set forth in Counts 2[2], 3, 5 and 6[3], as well as additional mailings to which Special Agent Amy Howard testified. ECF 143 at 4. The government submits that the amounts associated with the remaining counts, as well as all other mailings Agent Howard testified to at trial and that FBI Forensic Accountant Matt Morgan will testify to at the sentencing hearing are also properly attributed to this defendant.[4]

Defendant attempts to disclaim responsibility for the $65,000 that S.O. handed

---

[1]     The defendant bears the burden to prove he is entitled to a minor role adjustment.

[2]     The correct date for Count 2 is March 29, 2018.  ECF 45.

[3]     The correct date for Count 6 is September 6, 2018.  *Id.*  While the defendant is correct that the total amount that should be attributed to him for Count 6 is $19,500, Agent Howard explained at trial that the government chose to list $15,000 for Count 6 as that amount corresponded to S.O.'s notated receipt.  ECF 134 at 54-56.

[4]     While the jury acquitted the defendant of Count 4, the $45,000 charged in this count is properly attributed to this defendant by a preponderance of the evidence. Agent Howard testified that S.O. mailed a $45,000 cashier's check to S.P. on April 16, 2018. This cashier's check was intercepted by the Grandville Police Department and returned to S.O. ECF 134 at 38-48. Nonetheless, the crime was completed once Dobson convinced S.O. to mail the funds. *United States v. Kennedy,* 64 F.3d 1465, 1478 (10th Cir. 1995) (the "'completion' of both wire and mail fraud occurs when any wiring or mailing is used in execution of a scheme; there is no requirement that the scheme actually defraud a victim into investing money for the crime to be complete"). The fact the police fortuitously intercepted this mailing does not change the fact this amount is properly included for purposes of the loss calculation in this case. As Forensic Accountant Morgan will testify, the government appropriately subtracted these funds from the restitution amount owed.

over on the evening of October 3, 2018. ECF 143 at 4-5. That claim is as baseless as all his prior evolving versions regarding the events of that evening. When the defendant was first arrested outside of S.O.'s home, he adamantly denied to law enforcement that he had ever been to Estes Park before. At trial, after the defendant was confronted with irrefutable cell phone evidence that placed him there, he finally admitted that yes, he had traveled from New York to Estes Park and was present at S.O.'s residence the night of October 3, 2018. His incredulous claim on the stand and now is that he was asleep when others in the car picked up the cash from S.O. It should be rejected outright.

In the Government's Position Statement Re: Loss, Restitution and Forfeiture, the government fully explained why the loss in this case is **$974,955.41**. ECF 142 at 2-13. Defense counsel will have ample opportunity to cross-examine FBI Forensic Accountant Matt Morgan as to this calculation at the sentencing hearing.

### III.   S.O. Suffered a Substantial Financial Hardship

The defendant disputes the two-level enhancement for causing a substantial financial hardship to S.O. ECF 143 at 5-8. This enhancement is justified.

In determining whether this enhancement applies, the Court must make independent findings supporting its conclusions. *See United States v. Holloway,* 826 F.3d 1237, 1251 (10th Cir. 2016). The court can look beyond admissible evidence at trial as long as the information "has sufficient indicia of reliability to support its probable accuracy." *See, e.g.*, *United States v. Caiba-Antele*, 705 F.3d 1162, 1165 (10th Cir. 2013);  U.S.S.G. § 6A1.3(a).

The defendant is correct that the government bases this enhancement on the substantial financial harm S.O. suffered. The government never argued that the $3500 S.P. lost through this scheme warranted this enhancement. ECF 108 at 18-19. Although the probation office briefly referred to S.P.'s impact statement when finding that this enhancement applies, the PSIR also makes clear that its determination was not reliant on S.P.'s representations. *See* ECF 140 at 12, ¶ 70 (concluding that "the offense resulted in substantial financial hardship to **one or more** victims; therefore, increase by 2 levels. USSG §2B1.1(b)(2)(A)(iii)."). Because the approximately $1 million dollar loss suffered by S.O. clearly warrants this enhancement, it is not necessary for the Court to address the defendant's argument relating to S.P.

S.O. testified at trial that she worked for 50 years as a school librarian before she retired. ECF 110 at 4-5. In her detailed victim impact statement, S.O. explained that the $1 million she lost in this scheme constituted most of her and her husband's life savings. She also described the stress she endures trying to meet her financial obligations. ECF 140-2 at 3. All this evidence supports a finding by a preponderance of the evidence that the defendant's crimes caused S.O. to suffer a substantial financial hardship. *United States v. McClaflin*, 939 F.3d 1113, 1119-20 (10th Cir. 2019) (in finding a substantial financial hardship enhancement was warranted, the district court did not err "in relying on the sworn victim impact statements" . . . where twenty-eight victims indicated that "they had to make substantial changes to their employment or substantial changes to their living arrangements as a direct result of Ms. McClaflin's fraudulent scheme").

The defendant claims the Court should deny this enhancement because the government has not provided information as to S.O.'s current financial condition and whether she has been unable to pay any of her expenses or has had to sell her home as a result of his crimes. ECF 143 at 6-8. But that is not the legal standard. *See* Section 2B1.1(b)(2)(A), Cmt. N. 4(F). Counsel cites no law supporting this position, and undersigned counsel could find none. Instead, it is within this Court's discretion to review S.O.'s victim impact statement to determine whether it provides "sufficient indica of reliability to support its probable accuracy."[5] *Caiba-Antele,* 705 F.3d at 1165.

Finally, the defendant claims that his self-serving calculation of admitted loss ($144,234) amounts to only about 14 percent of the total loss S.O. suffered; thus, the Court cannot find that he caused her a substantial financial hardship. ECF 143 at 8. The defendant does not provide, however, any legal support for viewing substantial hardship this way. And even more importantly, the defendant conveniently ignores conspiracy law, which holds him liable for <u>all</u> the losses S.O. suffered through this conspiracy. *See United States v. Anthony,* 942 F.3d 955, 972 (10th Cir. 2019) ("[w]e have long held that a defendant convicted of a conspiracy offense is liable in restitution for all losses that proximately result from the conspiracy itself, including losses attributable to coconspirators") (citations omitted).

In sum, defendant's objection to this enhancement should be denied.

IV.     **Substantial Part of the Scheme Occurred Outside of the United States**

The defendant claims all "of the co-conspirators in the scheme, with the lone

---

[5]     S.O.'s statement is further bolstered by the victim impact statement provided by her adult son. ECF 140-2 at 2.

possible exception of Mr. Dobson, were physically present in the United States when they committed actions in furtherance of the scheme," and therefore, the Court should not impose a two-level enhancement for a substantial part of the scheme occurring outside of the United States.  ECF 143 at 9. Carving Dobson out is a huge "exception," one that would, if credited, certainly swallow the whole of the conspiracy. It ought to be rejected. This conspiracy begins, ends, and at all times throughout, has significant events taking place in Jamaica. The evidence at trial proved that Dobson -- a man the defendant grew up with in Jamaica -- was the person calling S.O. The defendant testified that Dobson lives in Jamaica and hadn't been back to the United States since 2017.  ECF 107 at 60, 124. The defendant testified that he set up the Magic Jack phone used to call S.O. and that he texted this number to Dobson. ECF 107 at 85, 122-123, 133. The defendant also testified that he texted addresses for receipt of packages to Dobson and that Dobson texted to him names and the tracking numbers for the packages back so he would know when and where to go and what to pick up. *Id.* at 132-138. The defendant testified that he had been picking up packages for Dobson for the past year, which was approximately the same period of time Dobson had been directing S.O. to mail packages related to this lottery fraud. *Id.* at 108. The defendant also admitted to coordinating with others in the United States in order to wire money back to Jamaica. *Id.* at 139, 142-43. In short, all of Dobson's conspiratorial conduct took place in Jamaica, and those efforts to defraud S.O. were successful because of Dobson's constant communications and coordination from Jamaica with the defendant back in the United States.

      There is overwhelming evidence that supports this enhancement and the

defendant's objection to it should be denied.

### V. The Government established at Trial S.O. is a Vulnerable Victim

The defendant incorrectly claims that the government stated or at least implied that S.O. is vulnerable "solely because she is elderly." ECF 143 at 10. In doing so, the defendant ignores the government's additional arguments as to S.O.'s vulnerabilities: for instance, that she "lived alone, had recently lost her husband, and was lonely." ECF 108 at 18. S.O. testified at trial about having lost her husband close in time to when she received the purported lottery flyer in the mail. For a time, Dobson filled a void by calling S.O. repeatedly and emotionally manipulating her multiple times a day for almost a year. The government provided expert testimony from Dr. Doug Shadel about the vulnerability of individuals who have just lost a spouse – regardless of age – during the months after such a devastating event. Dr. Shadel explained that the cognitive ability of individuals who suffer such a loss is diminished during this time frame and this explains why fraudsters often prey on such individuals. ECF 107 at 7-9. This vulnerability was clearly in place "before the crimes," contrary to defendant's assertions. ECF 143 at 10.

This Court heard S.O.'s and Dr. Shadel's testimony. The government submits all this evidence supports application of this two-level enhancement. *C.f. United States v. Lowder,* 5 F.3d 467, 472 (10th Cir. 1993) (vulnerable victim enhancement proper on a finding that the victims were elderly, unsophisticated retirees who were fraudulently induced to invest their retirement funds in a phony investment scam); *United States v. Brunson*, 54 F.3d 673, 676 (10th Cir. 1995) ("'vulnerable victims' are those who are in need of greater societal protection").

### VI.  Defendant is Not Entitled to a Minor-Role Adjustment

Despite admitting that his role in this conspiracy "was to collect money from the victim and also to move money between bank accounts," the defendant argues he is entitled to a minor-role adjustment. ECF 143 at 11.[6] The government disagrees and asserts that the defendant cannot meet his burden of proving by a preponderance of the evidence that he was "substantially less culpable than the average participant." *United States v. Nkome,* 987 F.3d 1262, 1277 (10th Cir. 2021) (quoting *United States v. Salazar-Samaniega,* 361 F.3d 1271, 1277 (10th Cir. 2004)).

Section 3B1.2 of the guidelines provides that if "the defendant was a minor participant in any criminal activity, decrease by **2** levels." (Emphasis in original). Such a reduction may apply to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." § 3B1.2 App. N. 3(A); *see Nkome,* 987 F.3d at 1273 (the "crux of § 3B1.2 is a defendant's relative culpability") (citing *United States v. Yurek,* 925 F.3d 423, 446 (10th Cir. 2019)). The determination of a "defendant's role in the offense is to be made on the basis" of all of the defendant's relevant conduct and not just "the acts cited in the count of conviction." *Nkome,* 987 F.3d at 1270.

Courts are permitted "not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime." *United States v. Caruth,* 930 F.2d 811, 815 (10th Cir. 1991) (citation

---

[6] To the extent the defendant is arguing his role in this conspiracy was as a mere money mule, this alone would not qualify him for the adjustment he seeks. *United States v. Nkome,* 987 F.3d 1262, 1277 (10th Cir. 2021) (holding, and citing case law, for the proposition that the district court "would not have been obliged to grant [the defendant] a mitigating-role adjustment simply because she was a 'money mule'").

omitted). The determination is "heavily dependent upon the facts of the particular case." § 3B1.2 at App. N. 3(C).

The guidelines set forth a non-exhaustive list of five factors to consider. The first factor is "the degree to which the defendant understood the scope and structure of the criminal activity." *Id.* at App. N. 3(C)(i); *Nkome,* 987 F.3d at 1271; *see also Salazar-Samaniega,* 361 F.3d at 1277 (role reduction inquiry focuses "upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense"). Notably, the Court is "not bound to accept the defendant's own declarations about his level of participation in the crime." *Caruth,* 930 F.2d at 814-15 (citation omitted).

The defendant admits that he "knew the scope of the activity but did not know its full extent," and that he "merely assisted in executing the plan." ECF 143 at 11. He did much more than assist the plan; his retrieval of the packages and his trips to S.O.'s home in Colorado completed the plan. Even if the defendant had argued that Dobson knew more about the structure of this conspiracy than the defendant, the facts presented at trial established that this defendant "'understood well how this conspiracy worked,' especially given [his] 'long run participation in' it." *Nkome,* 987 F.3d 1282.  In making this determination, the Court can consider this defendant's close personal "connection" to Dobson: the fact they were long-time friends who spoke to each other up to five times a day. *Id.*; ECF 107 at 61; *see also United States Lockhart,* 37 F.3d 1451, 1455 (10th Cir. 1994) (defendant was not a minor or minimal participant where he had "knowledge or understanding of the scope and structure" of the drug enterprise and activities of others).

The second factor addresses the "degree to which the defendant participated in planning or organizing the criminal activity." § 3B1.2 at App. N. 3(C). The defendant here planned and organized this conspiracy by providing the names and addresses to Dobson as locations to receive S.O.'s packages. ECF 107 at 132-138. All the names and addresses were, by the defendant's own admission, those of his friends and associates. The voluminous text messages exchanged between the defendant and Dobson about the addresses and tracking numbers for retrieval of S.O.'s packages established the defendant's planning and organizing of this conspiracy.

These same facts establish the third factor: they demonstrate that the defendant had some degree of decision-making authority and responsibility for activities here in the United States, namely by identifying safe locations for the receipt of S.O.'s packages. It was the defendant's decision about which addresses to use, not Dobson's.

The fourth factor addresses the "acts the defendant performed and the responsibility and discretion the defendant had in performing these acts." § 3B1.2 at App. N. 3(C). The facts set forth in the preceding paragraphs satisfy this factor as well.

The fifth factor is "the degree to which the defendant stood to benefit from the criminal activity." *Id.* The defendant's self-serving claim he "only marginally benefitted from the scheme," should be rejected. *See Caruth,* 930 F.2d at 814-15 (court is "not bound to accept the defendant's own declarations about his level of participation in the crime)." While there was evidence of wire transfers to Jamaica, those transfers do not come close to accounting for the approximately $1 million stolen from S.O. The defendant testified that he had picked up 300 to 400 packages in the past two years and was paid, as part of his alleged "business," up to $5,000 per package, depending on

how far he had to travel. In addition, the government retrieved from the defendant's phone pictures of the defendant holding stacks of cash, which the defendant incredulously claimed was "fake money." ECF 107 at 151-152. In sum, the defendant cannot meet his burden of proving he "only marginally benefitted from the scheme" as he alleges.

The defendant's claim that "more culpable members" of the conspiracy convinced S.O. to send money, and many others were "involved in the scheme" does not entitle him to the reduction he seeks. ECF 143 at 11-12. A minor role reduction is "not required just because multiple participants with differing levels of culpability are involved." *United States v. McColley,* 419 F. Supp. 2d 1310, 1313 (D. Kan. 2006); *United States v. Moreira,* 333 F. App'x 366, 374 (10th Cir. 2009). Even if this Court were to find the defendant was less culpable than Dobson, that finding alone would not entitle him to a role reduction.  *United States v. Adams,* 751 F.3d 1175, 1179 (10th Cir. 2014) ("a defendant is not entitled to a minor-participant reduction merely because 'he is the least culpable among several participants in a jointly undertaken criminal enterprise'") (quoting *Lockhart,* 37 F.3d at 1455). Rather, the proper inquiry is this defendant's relative culpability as compared to Dobson. The government submits this defendant is equally, if not more, culpable than Dobson due to his securing of addresses for the receipt of S.O.'s cash and taking possession of it. To be clear, the government is not arguing that the defendant's request for this adjustment should be denied due solely to his "essential or indispensable role in the criminal activity." *Nkome,* 987 F.3d 1275. Instead, the government submits that the defendant cannot meet his burden of proving he is substantially less culpable than the average participant in a lottery scheme in

11

general, and in this case, as compared to the role played by Dobson specifically.

Finally, as the district court in *Nkome* noted, the Guidelines did not "oblige it to mechanically add up the five factors; the adjustment determination was 'not a scoreboard kind of thing.'" 987 F.3d at 1280. Nonetheless, the government submits this Court should find that none of these factors weigh in this defendant's favor and his request for this adjustment should be denied.

### VII. Defendant is Not Entitled to a Below Guideline Range Sentence

The fact the defendant will lose his permanent resident status and likely be deported to Jamaica does not warrant a below guideline sentence in this case. ECF 143 at 13. If the defendant truly valued that status as he claims, he would not have risked it over and over again by assisting Dobson in this fraud and by picking up packages of S.O.'s cash for almost a year. Any argument the defendant offers by way of mitigation is far outweighed by the need to satisfy the Title 18, United States Code, Section 3553(a) factors as argued in the Government's Sentencing Statement, ECF 108. The harm to S.O. and the need for just punishment and deterrence are far too great. Indeed, it was the defendant's legal status in this country that was a critical component to achieving one of the fraud's end goals: the illegal exportation of a portion of S.O.'s funds to Dobson in Jamaica. A sentence of 108-months is sufficient, but not greater than

//

//

//

necessary to satisfy all the sentencing objectives of Section 3553(a) and the government will seek that sentence on August 5, 2021.

Respectfully submitted this 29th day of July, 2021.

                        MATTHEW T. KIRSCH
                        Acting United States Attorney
                        District of Colorado

By:    s/ *Martha A. Paluch*
        MARTHA A. PALUCH
        SARAH H. WEISS
        Assistant United States Attorneys
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        Martha.Paluch@usdoj.gov
        Sarah.weiss@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 29th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record in this case.

        s/ *Martha A. Paluch*
        MARTHA A. PALUCH
        SARAH H. WEISS
        Assistant United States Attorneys
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        martha.paluch@usdoj.gov
        Sarah.weiss@usdoj.gov