IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00098-CMA-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    RAJAY DOBSON,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Martha A. Paluch and Sarah H. Weiss, Assistant United States Attorneys for the District of Colorado, and the defendant, Rajay Dobson, personally and by counsel, Richard N. Stuckey, Esq., submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to

(1)    plead guilty to Count 1 of the Superseding Indictment charging a violation of Conspiracy to Commit Mail Fraud in violation of Title 18, United States Code, Section 1349;

(2)    waive certain appellate and collateral attack rights, as explained in detail below;

(4)    be liable for restitution to S.O. in the amount of **$881,447.41** and to S.P. in the amount of **$3,500**, the total amount of which should be ordered as joint and several with co-defendant Leonard Luton and **$4,750** of which should

COURT EXHIBIT
1
19-cr-00098

    be ordered joint and several with defendant Stacy Byfield, 19-cr-00207-RBJ-1;

(5)  agree not to contest forfeiture as more fully described below, the specific amount of which to be determined at sentencing.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado concerning discreet specific criminal episodes and to move to dismiss Counts 2-10 of the Superseding Indictment with prejudice, against this defendant only. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a second superseding indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The government further agrees to recommend a sentence within the advisory guideline range as calculated by the parties below.

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement,

the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

    (1)    the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 1349;

    (2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 24; or

    (3)    the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

    (1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

    (2)    the defendant was deprived of the effective assistance of counsel; or

    (3)    the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does

not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### D. **Forfeiture of Assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, .subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include but are not limited to: a money judgment in the amount of the proceeds obtained by the conspiracy. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the

time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The defendant further agrees to cooperate and assist the government in the forfeiture of the above-identified assets, including providing information on any third-party claims and providing testimony in any related third-party ancillary proceeding.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

Pursuant to 21 U.S.C. § 853(p)(3), the defendant agrees to immediately take all steps within the defendant's power to repatriate for forfeiture all funds, securities, assets and other property held by, under the control of, or in the name of the defendant, whether individually or jointly, outside the United States, including, but not limited to any

real estate, bank accounts, vehicles, or other personal or real propety in which the defendant has an interest located in Jamaica.

## II.   ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of Conspiracy to Commit Mail Fraud are as follows:

### Count One:  18 U.S.C. § 1349

To prove Conspiracy to Commit Mail Fraud, in violation of Title 18, United States Code, Section 1349, the government would have to show, beyond a reasonable doubt, that the defendant

(1) Two or more persons agreed to violate the law;

(2) The defendants knew the essential objectives of the conspiracy;

(3) The defendants knowingly and voluntarily participated in the conspiracy; and

(4) The alleged coconspirators were interdependent.[1]

To prove Mail Fraud, in violation of Title 18, United States Code, Section 1341, the government would have to show, beyond a reasonable doubt, that the defendant

(1)   devised a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises;

(2)   acted with the specific intent to defraud;

(3)   caused another person to mail something through the U.S. mail or private interstate carrier for the purpose of carrying out the scheme; and

(4)   the scheme employed false or fraudulent pretenses, representations, or

---

1 *See* Tenth Circuit Pattern Criminal Jury Instruction 2.19 (conspiracy in general); *United States v. Fishman,* 645 F.3d 1175, 1186 (10th Cir. 2011) (addressing § 1349 conspiracy and noting that a 1349 charge does not require proof of an overt act).

promises that were material.[2]

## III.　STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the Superseding Indictment is: not more than twenty years' imprisonment; maximum term of three years' supervised release; maximum fine of $250,000 or twice the gross gain or loss from the offense; $100 mandatory victim's fund assessment fee; restitution of **$884,947.41**, and an order of forfeiture in an amount to be determined at the time of sentencing.

## IV.　COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

Because the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V.　STIPULATION OF FACTS

The factual basis for this plea is set forth below.  Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set

---

[2] Tenth Circuit Pattern Jury Instruction No. 2.56; *United States v. Kalu,* 791 F.3d 1194, 1203 (10th Cir. 2015).

forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

The defendant maintains that in early 2018, another Jamaican national first contacted victim S.O. from Estes Park, Colorado and told her she had won a $2.8 million dollar lottery and a Mercedes Benz. That individual, and potentially others unknown, initially succeeded in convincing S.O. to send money to receive her "winnings." However, after a period of time, S.O. began to become suspicious, at which point the defendant was recruited into the scheme. Calling himself "Frank White," the defendant began calling S.O. in March of 2018 using a Magic Jack phone number set up for him by co-defendant Leonard Luton. The defendant told S.O. she needed to mail cash, cashier's checks, and cellphones via UPS and FedEx to pay the "fees" required in order to receive her prizes. The defendant directed S.O. to mail these payments to his co-defendant Leonard Luton's mailing address and to the addresses of Luton's friends and associates.

S.O. was also directed to mail some of the cashier's checks to a woman with the initials S.P. who lived in Grandville, Michigan. S.P. had been told she had won a $5 million lottery and that in order to receive her winnings, she needed to receive money from others and send it on. S.O. was also directed to wire funds to S.P., which S.O. did. In total, S.O. sent over $150,000 to S.P. as directed.

The defendant maintains the same Jamaican national referenced above was primarily involved in scamming S.P. but admits that he was involved as well, specifically with respect to a $45,000 cashier's check sent from S.O. to S.P. During the attempted depositing of this check, the Grandville Police Department became involved, and the defendant, calling himself "David," was recorded speaking to S.P.

The defendant, posing as "David," told S.P. that once she deposited funds received from S.O., S.P. was to obtain cashier's checks made payable to Luton. Specifically, screenshots from S.P.'s phone confirmed that she received a text message from the defendant using the 702 number providing her with Leonard Luton's name, his bank account, and routing information. The cashier's checks written by S.O. were cashed by S.P. and then deposited by S.P. into the same account listed in the text message she received from the defendant. Luton's bank account records confirmed that these amounts were deposited into a Bank of America account in the Luton's name, and for which he was the only signatory.

In addition, the defendant directed S.O. to hand over $65,000 in cash to persons who came to her home in Estes Park at approximately 1:30 a.m. on October 3, 2018. At that time, a man knocked on S.O.'s door, identified himself as an FBI agent, showed S.O. what appeared to her to be a real FBI badge, and directed her to hand over the cash. S.O. walked down her sidewalk to talk to a man in the car in front of her house who represented himself to be the "merchant banker," the defendant told her would come to her home. This "banker" instructed S.O. to hand over the cash to the man who had come to her door and S.O. did so.

The defendant also directed S.O. to hand over approximately $39,000 in cash

to persons who came to her home in Colorado on January 22, 2019. Law enforcement was involved in this case by that time. When Luton and his girlfriend Stacy Byfield[3] arrived at S.O.'s home, they were both arrested. In his post-arrest interview, Luton explained to the agents he was at S.O.'s home at the direction of the defendant, who asked Luton to travel from the defendant's home in Brooklyn, New York, to S.O.'s residence in Estes Park to pick up a package.

The Cellebrite extraction of Luton's cellphone provided multiple phone numbers for the defendant. The defendant, Luton, and others communicated with each other via text messages and other messaging services about the addresses where particular packages S.O. mailed would arrive and the tracking numbers associated with those mailings. Call detail records of Luton's phone confirmed his presence at the address where a particular package was scheduled to arrive, around the time of the expected delivery. At Luton's trial, the government presented, through the testimony of Special Agent Kevin Hoyland, 19 instances where this occurred with respect to packages mailed by S.O. as directed by the defendant. Voicemail messages retrieved from Luton's phone left by the defendant indicated the two discussed the distribution of funds between the two and others.

At trial, the government presented certified bank records that established the withdrawals of funds from S.O.'s bank accounts, and the deposits into, and withdrawals of cash from, Luton's bank accounts. Many of these deposits occurred at or near the dates of deliveries of cash from S.O. The government also presented evidence of Luton

---

[3] Ms. Byfield pled guilty to misprison of a felony in Case No. 19-cr-00207-RBJ. She spent five months in jail prior to being released on bond after her change of plea hearing. In May of 2020, she was sentenced to two years of probation.

directing others to wire funds to Jamaica on multiple occasions, and of him paying his friends hundreds of dollars around the times of deliveries of S.O. packages to their addresses.

The government proved, through the testimony of FBI Forensic Accountant Matt Morgan, that through this lottery scheme, the defendant and Luton defrauded S.O. out of over $700,000 as alleged in the Superseding Indictment. However, at Luton's sentencing hearing, the government proven, through the testimony of Mr. Morgan that the amount of loss to S.O. was **$971,455.41** and the loss to S.P. was **$3,500** for a total loss amount of **$974,955.41**.[4] These loss amounts all occurred after Luton set up the Magic Jack number for Dobson to use in calling S.O. and S.P.

The defendant, with counsel, met with the government soon after his extradition from Jamaica and admitted his involvement in the scheme. Based upon the defendant's acceptance of responsibility for his conduct, the government submits he should receive the full three-level reduction for acceptance of responsibility.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States

---

4 The restitution amount differs from the loss amount in that some money was returned to S.O. from banks and commercial carriers when those entities suspected fraud.

Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. Although the government is obligated to make the sentencing recommendation tied to an offense level of 24, as set forth in the Agreement section above, the parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a) Under Section 2B1.1(a)(1), the base offense level is **7**.

b) There is a **14-level** increase as a result of the defendant conspiring to cause losses of more than $550,000 but less than $1.5 million, U.S.S.G. § 2B1.1(b)(1)(H)

c) There is a **2-level** increase because this offense caused substantial financial hardship to S.O., U.S.S.G. §2B1.1(b)(2)(A)(iii);

d) There is a **2-level** increase because a substantial part of the scheme was committed from outside the United States, U.S.S.G. § 2B1.1(b)(10)(B);

e) There is a **2-level** increase because S.O. was a vulnerable victim, and the defendant knew this fact, U.S.S.G § 3A1.1(b)(1);

f) Given that the defendant and Luton were equal partners in this scheme, the government agrees with the defendant that an adjustment for aggravating role pursuant to § 3B1.1(c) is not warranted.

g) The adjusted offense level is **27**.

h) The offense level should be decreased by **2** levels due to the defendant's acceptance of responsibility for the offense, U.S.S.G § 3E1.1(a), and the government will file a motion stating that the defendant should be entitled to an additional **1**-level reduction due to his timely notification of his intention to enter a guilty plea, U.S.S.G § 3E1.1(b).

i)  The resulting total offense level is **24.** The advisory guideline range resulting from these calculations is **51 to 63 months**.

j)  The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

k)  The career offender/criminal livelihood/armed career criminal adjustments do not apply.

l)  The advisory guideline range resulting from these calculations is **51 to 63 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from **51** months (bottom of Category I) to **125** months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

m)  Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and penalties.

n)  Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term at least one year, but not more than three years.

o)  The defendant should be liable for restitution to S.O. in the amount of **$881,447.41**[5] and to S.P. in the amount of **$3,500**, the total amount of which should be ordered as joint and several with co-defendant Leonard Luton and **$4,750** of which should be ordered joint and several with defendant Stacy Byfield, 19-cr-00207-RBJ-1;

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory

---

[5] The restitution amount differs from the loss amount in that certain amounts were returned to S.O. from banks and commercial carriers.

guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: Jan, 26, 2022

RAJAY DOBSON
Defendant

Date: JAN. 26, 2022

RICHARD N. STUCKEY
Attorney for Defendant

Date: 3/24/22

MARTHA A. PALUCH
Assistant U.S. Attorney

Date: 3.24.22

SARAH H. WEISS
Assistant U.S. Attorney